**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**
**EASTERN DIVISION**

--------------------------------------------------------

**SHAUN MOORE**, *individually, and on*    :
*behalf of all others similarly situated,*    :
                                             :
                    Plaintiff,                :
                                             :          Civil Action No.: 1:23-cv-13106-DJC
            v.                                :
                                             :
**CEDARS MEDITERRANEAN**                      :
**FOODS, INC.**                               :
                                             :
                    and                       :          Honorable Denise J. Casper
                                             :
**CEDARS MEDITERRANEAN**                      :
**DISTRIBUTION, INC.**                        :
                                             :
                                             :
                    Defendant.               :

--------------------------------------------------------

**MEMORANDUM OF LAW IN SUPPORT OF THE PARTIES' JOINT MOTION FOR**
**FINAL APPROVAL OF COLLECTIVE ACTION SETTLEMENT**

## TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................ 1

II.   BACKGROUND ................................................................................................ 2

   A.  The Claims and Defenses........................................................................... 2

   B.  Procedural History ................................................................................... 4

   C.  The Proposed Settlement ......................................................................... 4

III.  LEGAL ARGUMENT ....................................................................................... 5

   A.  *Bona Fide* Dispute .................................................................................... 5

   B.  The Settlement is Fair and Reasonable .................................................... 6

      1)  Plaintiff's Range of Possible Recovery ........................................ 7

      2)  Extent to Which the Settlement Will Avoid Litigation Burdens & Expenses ............... 8

      3)  Risks of Establishing Liability & Damages and of Maintaining the Collective ............ 9

      4)  Product of the Parties' Arm's-Length Bargaining and Absence of Fraud & Collusion 10

   C.  The Court Should Grant Final Certification of the Settlement Collective........................ 12

   D.  Attorneys' Fees ....................................................................................... 13

      1)  The "Percentage of Fund" Approach ........................................... 15

      2)  Amount of Time Devoted by Plaintiff's Counsel ......................... 15

      3)  Results of a Lodestar Cross-Check .............................................. 16

   E.  Costs........................................................................................................ 18

   F.  Service Award......................................................................................... 18

IV.   CONCLUSION................................................................................................ 19

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*Altier v. Worley Catastrophe Response, LLC*, No. 11-241; 11-242, 2012 U.S. Dist. LEXIS 6391 (E.D. La., Jan. 18, 2012)……………………………………………………………………10

*Anderson v. Team Prior, Inc.*, No. 2:19-cv-00452-NT, 2022 U.S. Dist. LEXIS 196144 (D. Me. October 28, 2022)……………………………………………………………….....…11, 12

*Anderson v. Team Prior, Inc.*, No. 2:19-cv-00452-NT, 2021 U.S. Dist. LEXIS 162626, at *3 (D. Me. Aug. 27, 2021)…..…………………………………………………………………..13

*Atis v. Freedom Mortg. Corp.*, No. 15-03424 (RBK/JS), 2018 U.S. Dist. LEXIS 189586 (D.N.J. Nov. 6, 2018)……………………………………………………………………………12

*Bergeron v. Town of Brookline,* No. 1:23-cv-12934-JEK, 2025 U.S. Dist. LEXIS 91751 (D. Mass. May 14, 2025)……………………..…………………………………………..……7, 14

*Binienda v. Atwells Realty Corp.,* No. 15-cv-00253-WES, 2018 U.S. Dist. LEXIS 203019, 2018 WL 6266784 (D.R.I. Nov. 30, 2018)……………………………....…………………………5

*Bonetti v. Embarq Mgmt. Co.*, 715 F. Supp. 2d 1222 (M.D. Fla. 2009)………………...………..6

*Brown v. Kadence Int'l, Inc.*, No. 22-1097-KSM, 2023 U.S. Dist. LEXIS 49202 (E.D. Pa. Mar. 23, 2023)………………………..…………………………………………………….……13, 18

*Brown v. Wheatleigh Corp.*, No. 3:18-cv-30056-KAR, 2024 U.S. Dist. LEXIS 69932 (D. Mass. April 16, 2024)…………………………………………………………………………..…..14

*City P'ship Co. v. Atl. Acquisition Ltd. P'ship*, 100 F.3d 1041 (1st Cir. 1996)……………………11

*Curtis v. Scholarship Storage Inc.*, No. 14-cv-303-NT, 2016 WL 3072247 (D. Me. May 31, 2016)…………………………………………………………………...………..…7

*Davis v. Footbridge Eng'g Servs., LLC,* No. 09cv11133-NG, 2011 U.S. Dist. LEXIS 93645 (D. Mass. August 22, 2011)……………………………………………………………17, 18

*Deitz v. Budget Renovations & Roofing, Inc.*, No. 4:12-CV-0718, 2013 U.S. Dist. LEXIS 75005 (M.D. Pa. May 29, 2013)…………………………………………………….……………5

*Drexler v. Tell Nexx, Inc.,* No. 13-cv-13009-ADB, 2019 U.S. Dist. LEXIS 141642 (D. Mass. Aug. 21, 2019)……………………………………………………………….……………5, 6

*Ellis v. Edward D. Jones & Co., L.P.*, 527 F. Supp. 2d 439 (W.D.Pa., Dec. 18, 2007)…...………10

*Herb v. Homesite Grp. Inc.,* No. 1:22-cv-11416-JEK, 2024 U.S. Dist. LEXIS 135170 (D. Mass. July 31, 2024)…………………………………………….,…………………....11, 13, 17

*In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294 (3d Cir. 2005)……..………………………………..16

*In re Thirteen Appeals Arising Out of San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d 295 (1st Cir. 1995)……....………………………………………………………………………………14

*Johnson v. VCG Holding Corp.*, 802 F. Supp. 2d 227 (D. Me. 2011)…..……………………………12

*Kapolka v. Anchor Drilling Fluids USA, LLC*, No. 2:18-cv-01007-NR, 2019 U.S. Dist. LEXIS 182359 (W.D. Pa. Oct. 22, 2019)……………………………………………………………6, 17

*Katz v. DNC Servs. Corp.*, No. 16-5800, 2024 U.S. Dist. LEXIS 20629 (E.D. Pa. Feb. 5, 2024)………………………………………………………………….……………17, 19

*Kraus v. PA Fit II, LLC*, 155 F. Supp. 3d 516 (E.D. Pa. 2016)……………………………..……5

*Krokos v. Fresh Mkt., Inc.*, No. 1:16-cv-12082-IT, 2018 U.S. Dist. LEXIS 204230 (D. Mass. March 21, 2018)……………………………………………………….……17, 18, 19

*Li Zhen Zhu v. Wanrong Trading Corp.*, No. 18-CV-417 (ENV)(MMH), 2024 U.S. Dist. LEXIS 179236 (S.D.N.Y Sept. 30 2024)……………………………………………….…………9

*Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350 (11th Cir. 1982)………………………..5

*McGowan v. CFG Health Network, LLC*, No. 3:22-cv-02770-ZNQ-RLS, 2024 U.S. Dist. LEXIS 60062 (D.N.J. March 28, 2024)……………………………………..………………………20

*Mickelson v. City of Encinitas*, No. 22-cv-0487-BAS-BLM, 2023 U.S. Dist. LEXIS 38819 (S.D. Cal. Mar. 7, 2023)……………………………………………………………………...…9

*Oliveira v. Language Line Servs.*, 767 F. Supp. 3d 984 (N.D.. Cal. 2025)…………………………10

*Pallotta v. Univ. of Mass. Mem'l Med. Ctr.*, No. 4:22-cv-10361-ADB, 2023 U.S. Dist. LEXIS 215863 (D. Mass. December 5, 2023)………………………………………………………19

*Payton-Fernandez v. Burlington Stores, Inc.*, No. 22-608 (AMD) , 2024 U.S. Dist. LEXIS 231619 (D.N.J. December 23, 2024)…………………………………………....………..…….9, 16

*Prescott v. Prudential Ins. Co.*, 729 F. Supp. 2d 357 (D. Me. 2010)…..…………………….……....12

*Preston v. World Travel Holdings, Inc.*, No. 1:23-cv-12389-JEK, 2024 U.S. Dist. LEXIS 23070 (D. Mass., Feb. 9, 2024)……………………………………………………………………...7

*Roberts v. TJX Cos.*, No. 13-cv-13142-ADB, 2016 U.S. Dist. LEXIS 136987 (D. Mass. Sep. 30, 2016)………………………………………………………………………...…6, 9, 11

*Rodriguez v. Belfor USA Grp., Inc.*, No. 22-cv-02071-VKD, 2025 U.S. Dist. LEXIS 97301 (N.D.

Cal., May 21, 2025)……………………………………………………………………10

*Rouse v. Comcast Corp.*, No.: 14-1115, 2015 U.S. Dist. LEXIS 49347 (E.D.Pa. April 14, 2015)..16

*Scovil v. FedEx Ground Package Sys., Inc.*, No. 10-cv-515-DBH, 2014 U.S. Dist. LEXIS 33361 (D. Me. Mar. 14, 2014)…………………………….…………………………………14

*Singleton v. AT&T Mobility Servs., LLC,* 146 F. Supp. 3d 258 (D. Mass. 2015)…………...….7, 14

*Sullivan v. DB Invs., Inc.*, 667 F.3d 273 (3d Cir. 2011)……………………………...……18

*Ying v. All-Ways Forwarding of N.Y. Inc.*, No. 20-CV-6242 (ENV)(MMH), 2025 U.S. Dist. LEXIS 61448 (E.D.N.Y. March 31, 2025)……………….…………………………………..14, 17

**Statutes**

FLSA, 29 U.S.C. § 201, *et seq*……………………………………...………………...1, 2, 3

F.R.C.P. 23……………………………………………………….……………………2, 3, 6, 13

RSMo. § 290.500, *et seq*…………………………………………………………….…2

## I.    INTRODUCTION

Plaintiff, Shaun Moore (the "Named Plaintiff"), and Defendant, Cedars Mediterranean Foods, Inc. and Cedars Mediterranean Distribution Inc. (the "Defendants" or "Cedars"), having obtained preliminary approval of a collective settlement pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. § 201, *et seq.* (the "FLSA"), *see* Ex. A, the executed Settlement Agreement (the "Settlement"), are now submitting their motion for final approval of the Settlement. The Court-approved opt-in period has concluded, and thirty-three (33) individuals have joined this action, including the Named Plaintiff, reflecting an opt-in rate of approximately 49%. There have been no objections filed.

The Settlement covers all current and former delivery drivers (defined in ECF No. 18, ¶¶ 3-4, 32-40) who worked for Cedars in any place covered by the FLSA at any time within the three (3) years before January 8, 2025. Ex. A, § I.B.    The collective period is from January 9, 2022 to January 8, 2025 (the "collective period")[1]. The total number of the putative collective members is 68[2], including the Named Plaintiff. *See* Ex. B, Declaration of Scott Simpson, ¶ 4.

The Settlement provides each opt-in collective member a settlement amount calculated by using four (4) hours of overtime per workweek at the highest hourly overtime rate that individual earned during the collective period, multiplied by the total number of workweeks worked during the collective period, to determine each collective member's preliminary settlement share. Ex. A, § II.A.1. The total preliminary settlement shares claimed by all Settlement Collective[3]  members are about $349,686.86. Ex. B, ¶ 9.

---

[1]  The Named Plaintiff's damages' calculation period is three (3) years before his consent to sue form filing date of December 15, 2023.

[2]  The total number of the putative collective members was adjusted from 72 to 68 through data reconciliation when sending out notices. The total factored workweeks remain unchanged.

[3]  Capitalized terms not defined here have the meaning in the Settlement Agreement.

The Named Plaintiff's attorneys (the "Class Counsel") respectfully request a fee of One-Third (1/3) of all claimed settlement shares at $116,562.28 for counsel fees including case expenses. Ex. A, § II.A.2.    The total final settlement shares to be paid to the Settlement Collective is $233,124.58. Ex. B, ¶ 9.

In addition to his final settlement share, the Named Plaintiff will receive a $10,000.00 service award for his role in prosecuting the action and providing a general release of claims. Ex. A, § II.B. Cedars further agrees to pay the cost of the settlement administrator, Optime Administration, LLC ("Optime") in the amount of 6,992.00, separate from the settlement collective's recovery. Ex. A, § II.C; Ex. B, ¶ 12.

The Settlement is fair, reasonable, and adequate, reflecting the inherent litigation risks, uncertainties, and the fact intensive nature of FLSA misclassification actions, and ensures meaningful compensation for settlement collective members. This Settlement is the result of arm's length negotiations. No one has objected to the Settlement. For the reasons set forth below, the parties respectfully request that the Court grant final approval of the Settlement in its entirety.

## II.        BACKGROUND

### A.    The Claims and Defenses

The Named Plaintiff alleges that Cedars violated the FLSA and the Missouri Wage and Hour Law ("MWHL"), RSMo. § 290.500, *et seq*., by misclassifying delivery drivers as independent contractors, paying them a flat weekly rate, and failing to pay any overtime wages. The Plaintiff initially pled both an FLSA collective and a Rule 23 class. ECF No.18, ¶¶ 4-5. Defendants provide food products and food distribution services and use delivery drivers who handle food products that travel in interstate commerce. ECF No.18, ¶¶ 28-31.    The Named Plaintiff argues that delivery drivers in fact were treated as and did work as employees of the

Defendants and thus should have been paid overtime wages at time-and-a-half (1.5) of their regular rate for hours worked in excess of forty (40) in a workweek. ECF No. 18, ¶¶ 44-53.

Defendants deny all these allegations and assert that they have fully compensated the Plaintiff and all other delivery drivers in compliance with the FLSA and any state wage and hour laws. Specifically, Defendants contend that, *inter alia*:

- Plaintiff and the putative collective members do not meet the requirements of 29 U.S.C. § 216(b) and cannot maintain a collective action under the FLSA;

- Plaintiff and the putative class cannot satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure, specifically, but not limited to, numerosity;

- Plaintiff and the putative collective members received compensation for all time worked under the FLSA and applicable wage and hour laws;

- Defendants acted at all times in good faith conformity with, and in reliance on, administrative regulations, orders, rulings, approvals, policies and/or interpretations of the FLSA.

- Plaintiff and the putative collective members are not entitled to overtime compensation and are exempt pursuant to by the Motor Carrier Act, 49 U.S.C. § 31502.

*See generally* ECF No. 22, pgs. 12-14. Regarding the size and scope of the putative Rule 23 class under the MWHL, Cedars has represented that, during the relevant time period, it employed only seven (7) individuals as delivery drivers in Missouri, including the Named Plaintiff. *See* Declaration of Zijian Guan ("Guan Decl."), ¶ 6.

Cedars provided the relevant data, including the total number of work weeks and pay rate for each of the putative collective members, allowing the parties to negotiate a fair settlement. Guan Decl. at ¶ 6. These disclosures ensured that both parties negotiated with a full understanding of the number of affected individuals and the extent of their potential claims, supporting the fairness and reasonableness of the settlement agreement.

### B.    Procedural History

The Named Plaintiff filed the motion seeking preliminary approval on or about July 31, 2025. ECF No.37. The Court granted said motion on or about August 19, 2025. ECF No. 38. Pursuant to the Court's preliminary approval, Optime sent out the notice of settlement with consent-to-join form packet to the delivery drivers on or about September 12, 2025; with several reminders via mail and email, the opt-in period ended on November 11, 2025. Ex. B, ¶ 4. Thirty-three (33) individuals have opted into the Settlement including the Named Plaintiff, with no objections received. *Id*, ¶¶ 9, 11. The final fairness hearing is currently set for December 22, 2025.

### C.    The Proposed Settlement

Under the Settlement, each opt-in collective member's damages are four (4) hours of overtime per workweek at the highest hourly overtime rate that the individual earned during the collective period, multiplied by the total number of workweeks worked during the collective period. This amount is the specific collective member's preliminary settlement share. Minus the One-Third (1/3) of the preliminary settlement share as counsel fees and costs, the remaining amount is the final settlement share that the individual will receive.

Thirty-three (33) Settlement Collective members, including the Named Plaintiff, have opted into the Settlement. The Aggregate Preliminary Settlement Amounts are $349,686.86. Ex. B, ¶ 9.   The Class Counsel respectfully requests Court approval of One-Third (1/3) of the preliminary settlement shares at $116,562.28 as counsel fees and expenses. Ex. A, § II.A.2.   The total settlement to be paid to the Settlement Collective is $233,124.58. Ex. B, ¶ 9.   The highest individual final net payment is $18,318.86 and the lowest amount is $8.57. The average individual final net payment is about $7,064.38. Ex. B, ¶ 10.

Now the parties seek an order granting final approval, declaring the Settlement to be

binding on all parties, approving the amount of attorneys' fees and expenses requested by Class Counsel, the amount of the service award to the Named Plaintiff, and the administration costs to the Settlement Administrator Optime. The Court will retain jurisdiction over the administration and enforcement of the Settlement, ensuring that all terms are properly implemented.

### III.    LEGAL ARGUMENT

In the FLSA settlement context, "[t]he Court may approve a proposed settlement upon a finding that all parties to the action have agreed to it and that it represents a 'fair and reasonable resolution of a bona fide dispute over FLSA provisions.'" *Drexler v. Tell Nexx, Inc.,* No. 13-cv-13009-ADB, 2019 U.S. Dist. LEXIS 141642, at *3 (D. Mass. Aug. 21, 2019) (citing *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1355 (11th Cir. 1982)). *See also, Binienda v. Atwells Realty Corp.,* No. 15-cv-00253-WES, 2018 U.S. Dist. LEXIS 203019, 2018 WL 6266784, at *1 (D.R.I. Nov. 30, 2018).

### A.    *Bona Fide* **Dispute**

A "dispute is '*bona fide*' where it involves factual issues, rather than legal issues such as the statute's coverage and applicability." *Kraus v. PA Fit II, LLC*, 155 F. Supp. 3d 516, 530 (E.D. Pa. 2016) (internal quotation marks omitted). As a result, the Court needs to "consider the substantive allegations and determine whether factual issues, specific to these parties, are actually in dispute." *Deitz v. Budget Renovations & Roofing, Inc.*, No. 4:12-CV-0718, 2013 U.S. Dist. LEXIS 75005, at *8 (M.D. Pa. May 29, 2013). "In essence, for a *bona fide* dispute to exist, the dispute must fall within the contours of the FLSA and there must be evidence of the defendant's intent to reject or actual rejection of that claim when it is presented." *Kraus*, 155 F. Supp. 3d at 530.

Here, the Named Plaintiff alleges that he and all other similarly situated delivery drivers

were misclassified as independent contractors, paid a flat weekly rate and worked overtime hours without compensation, and seeks payments for all unpaid wages and other applicable damages. In contrast, Cedars contends that all of the delivery drivers were properly classified as independent contractors exempt from overtime pay. Cedars also asserts that all delivery drivers received all compensation for all hours worked and did not work more than 40 hours a week. Further, Cedars argues that Named Plaintiff cannot maintain his Missouri wage and hour claims as a Rule 23 class action, particularly because he cannot satisfy the numerosity requirement of Rule 23 because there are only seven (7) potential class members.

Moreover, the Parties reached the settlement after engaging in informal discovery and extensive negotiations. Guan Decl. at ¶¶ 6, 7. This establishes that the dispute falls squarely within the FLSA's scope and involves genuine factual disagreements that justify judicial approval of the parties' settlement. *See, e.g.*, *Drexler*, 2019 U.S. Dist. LEXIS 141642, at *4 (finding bona fide dispute where the defendants misclassified the plaintiff, a technical writer, as exempt from overtime wages, which the defendants denied); *Roberts v. TJX Cos.,* No. 13-cv-13142-ADB, 2016 U.S. Dist. LEXIS 136987 (D. Mass. Sep. 30, 2016) (approving collective settlement involving misclassified assistant store managers).

### B.     The Settlement is Fair and Reasonable

The standard for "assess[ing] whether the proposed settlement is fair and reasonable" is "not exacting." *Kapolka v. Anchor Drilling Fluids USA, LLC*, No. 2:18-cv-01007-NR, 2019 U.S. Dist. LEXIS 182359, *6 (W.D. Pa. Oct. 22, 2019). "'If the parties are represented by competent counsel in an adversary context, the settlement they reach will, almost by definition, be reasonable.'" *Id*. at *6 (quoting *Bonetti v. Embarq Mgmt. Co.*, 715 F. Supp. 2d 1222, 1227 (M.D. Fla. 2009)). Only "[r]arely will the Court be in a position to competently declare that such a

settlement is 'unreasonable.'" *Bonetti*, 715 F. Supp. 2d at 1227.

In the First Circuit, when evaluating a FLSA collective settlement, courts typically consider the "totality of the circumstances," which may include the following factors:

> "(1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion."

*Preston v. World Travel Holdings, Inc.,* No. 1:23-cv-12389-JEK, 2024 U.S. Dist. LEXIS 23070, at * 12-13 (D. Mass., Feb. 9, 2024) (quoting *Singleton v. AT&T Mobility Servs., LLC,* 146 F. Supp. 3d 258, 260-61 (D. Mass. 2015). "The court's role is to ensure that the settlement reflect[s] a reasonable compromise over issues . . . that are actually in dispute, rather than a pure discount on clearly-owed wages." *Bergeron v. Town of Brookline,* No. 1:23-cv-12934-JEK, 2025 U.S. Dist. LEXIS 91751, at * 9 (D. Mass. May 14, 2025) (quoting *Curtis v. Scholarship Storage Inc.*, No. 14-cv-303-NT, 2016 WL 3072247, at *2 (D. Me. May 31, 2016)) (internal quotation marks omitted).

   1) <u>Plaintiff's Range of Possible Recovery</u>

This factor favors court approval of the proposed collective Settlement. Class Counsel's estimation of the putative collective's unpaid overtime wages with an aggregate of 3,788.43 workweeks is close to $767,000.00. If all of the putative collective members choose to participate in the Settlement, using the formula prescribed in the agreement – overtime hourly rate multiplied by four (4) hours of overtime per work week, the total damages of the entire collective would be approximately $560,000.00. Hence, the total damages available to claim is approximately 73.0% of the asserted unpaid overtime wages with certainty, and without any risks of the litigation. Collectively, the thirty-three (33) Settlement Collective members claimed about 62.4% of the

agreed damages recovery under the Settlement. In contrast to the possibility of recovering zero dollars if the Named Plaintiff and all other delivery drivers are found to be exempt from overtime pay, the Settlement is an excellent result for these employees and should be approved. There are many other risks attendant to the litigation, including, but not limited to the risk of obtaining collective certification under 216(b), the risk of decertification after formal discovery, the risk of individuals not meaningfully participating in discovery, Plaintiff failing to establish that he and other putative collective members were employees of Defendants, that they worked the number of overtime hours claimed by Plaintiff, and/or that Defendants' conduct was willful and not in good faith. The Settlement eliminates the risk and locks in a certainty for anyone who chose to participate.

2) <u>Extent to Which the Settlement Will Avoid Litigation Burdens & Expenses</u>

The Settlement allows the parties to avoid the burden and expense of establishing their respective claims and defenses. If not settled, the factual and legal issues will be centered on the delivery drivers' job duties and actual weekly hours worked, Cedars' extent of control over the delivery drivers, the Named Plaintiff's ability to maintain the collective, and Cedars' alleged good faith in classifying the delivery drivers as independent contractors. The parties will have to spend significant amounts of time and monetary resources on discovery and motion practice, such as the Plaintiff's motion for conditional certification and Cedars' opposition, exchange of written discovery requests and production, depositions of the Named Plaintiff, selected putative collective members and Cedars' employee(s) and company representative(s), Cedars' possible motion for summary judgment and Plaintiff's opposition, and attending court hearings, with mounting expenses on court reporters and travel, all of which cannot guarantee a successful recovery for the collective.

Here, the parties engaged in informal discovery and calculations of potential damages models, allowing them to assess the strength of Plaintiff's claims and Defendants' defenses. The Settlement was reached after both sides had a thorough understanding of the merits and extent of alleged damages. The Settlement enables the putative collective to recover about 73.0% of the asserted unpaid overtime wages with certainty and finality. The recovery period is three (3) years, not two (2). Thus, the second factor also favors approval of the Settlement. *See e.g., Mickelson v. City of Encinitas*, No. 22-cv-0487-BAS-BLM, 2023 U.S. Dist. LEXIS 38819, at *9 (S.D. Cal. Mar. 7, 2023) (approving the settlement with the plaintiffs recovering 78% of the damages in a two-year period.); *Li Zhen Zhu v. Wanrong Trading Corp.*, No. 18-CV-417 (ENV)(MMH), 2024 U.S. Dist. LEXIS 179236, at *34 (S.D.N.Y Sept. 30 2024) (approving a settlement fund of $280,000 "even though the maximum possible recovery could be as high as $2.87 million."); *Payton-Fernandez v. Burlington Stores, Inc.*, No. 22-608 (AMD) , 2024 U.S. Dist. LEXIS 231619 (D.N.J. December 23, 2024) (approving the settlement for misclassified assistant store managers which represented 32.7% of recovery). Indeed, "a settlement ensures that immediate payment of substantial amounts is made to class members, even if the recovery post-trial may be hypothetically larger." *Li Zhen Zhu*, 2024 U.S. Dist. LEXIS 179236, at *34.

      3)  <u>Risks of Establishing Liability & Damages and of Maintaining the Collective</u>

Proceeding to trial would bring serious risks to the Named Plaintiff's ability to establish liability (*i.e.*, misclassification) and maintain the collective through the final certification phase. These disputes raise significant litigation risks, as proving liability would require fact-intensive inquiries, including testimony about specific routes, schedules and job duties, actual weekly hours worked including overtime, analysis of payroll records and Cedars' employment practices and control over the delivery drivers, and possible expert opinions on these key issues. *See, e.g.*,

*Roberts*, No. 13-cv-13142-ADB, 2016 U.S. Dist. LEXIS 136987, at *21 (noting "although the FLSA ... misclassification cases are not necessarily legally complex, they are heavily fact and time-intensive.").

Additionally, the collective opt-in rate of about 49% is an excellent result. "The opt-in rate in a FLSA collective action not backed by a union is generally between 15 and 30 percent." *Ellis v. Edward D. Jones & Co., L.P.*, 527 F. Supp. 2d 439, 444 (W.D.Pa., Dec. 18, 2007). *See also, Rodriguez v. Belfor USA Grp., Inc.*, No. 22-cv-02071-VKD, 2025 U.S. Dist. LEXIS 97301, at *27 (N.D. Cal., May 21, 2025) (noting that the typical opt-in rate in FLSA collective actions is in the range of 14% to 25%); *Oliveira v. Language Line Servs.*, 767 F. Supp. 3d 984, 1006 (N.D.. Cal. 2025) (noting the 42.7% high FLSA opt-in rate); *Altier v. Worley Catastrophe Response, LLC*, No. 11-241; 11-242, 2012 U.S. Dist. LEXIS 6391, at *74 (E.D. La., Jan. 18, 2012) (noting that most of FLSA cases studied had opt-in rates below 20 percent). The fact that almost half of the putative collective members have opted into the Settlement who have claimed 62.4% of the agreed damages recovery reflects the positive opinions of the Settlement Collective members.

In sum, the third factor favors approval, because the Settlement eliminates litigation risks for the Named Plaintiff and putative collective members and provides certainty for monetary recovery.

4) <u>Product of the Parties' Arm's-Length Bargaining and Absence of Fraud & Collusion</u>

Cedars produced payroll data allowing the Class Counsel to meaningfully evaluate the extent and scope of potential recovery for the collective. Guan Decl. at ¶ 6. The parties, both represented by experienced wage and hour counsel, conducted settlement negotiations for several months in 2024, and then negotiated back and forth and finalized the Settlement Agreement this year. Guan Decl. at ¶ 8. Hence, the Settlement is the product of extensive arm's-length bargaining

and should be approved. *See e.g., Roberts*, No. 13-cv-13142-ADB, 2016 U.S. Dist. LEXIS 136987, at *19 (noting "there is a presumption in favor of the settlement if the parties negotiated it at arms-length, after conducting meaningful discovery.") (citing *City P'ship Co. v. Atl. Acquisition Ltd. P'ship*, 100 F.3d 1041, 1043 (1st Cir. 1996); *Anderson v. Team Prior, Inc.*, No. 2:19-cv-00452-NT, 2022 U.S. Dist. LEXIS 196144, at * 1 (D. Me. October 28, 2022) (approving the settlement reached for delivery drivers because "among others, settlement was achieved after months of arm's-length negotiations by experienced counsel, which followed an exchange of informal discovery of class-wide data.").

There is also no evidence of fraud or collusion, and neither party alleges so. *See Herb v. Homesite Grp. Inc.,* No. 1:22-cv-11416-JEK, 2024 U.S. Dist. LEXIS 135170, at *9 (D. Mass. July 31, 2024) (approving the settlement partly because "there is no reason to suspect, nor does either party assert, that fraud or collusion played any role in achieving the settlement."). Further, there have been no objections to the Settlement.

In sum, the fourth and fifth factors support the approval of the Settlement. The proposed Settlement was reached through arm's length negotiations by experienced counsel.

The proposed Settlement aligns with the FLSA's objectives because it contains no confidentiality provisions that would restrict collective members from discussing their claims or settlement, ensuring transparency and public awareness of wage rights. Additionally, the release of claims is appropriately limited, covering only wage and hour/misclassification claims[4], without requiring employees to waive broader employment rights. This ensures that workers retain their ability to pursue other potential legal claims, reinforcing the FLSA's purpose of protecting

---

[4]  Except the Named Plaintiff who is receiving incentive awards in exchange for a broader release.

employees while preventing overreach.[5]  Because all of the relevant factors are satisfied, the Court should conclude that the Settlement is fair and reasonable.

### C.    The Court Should Grant Final Certification of the Settlement Collective

"Employees may bring FLSA claims as collective actions, but unlike a class action under Federal Rule of Civil Procedure 23, FLSA collective action plaintiffs must opt-in, or consent in writing filed with the court, to be a party to the action and to be bound by the judgment." *Atis v. Freedom Mortg. Corp.*, No. 15-03424 (RBK/JS), 2018 U.S. Dist. LEXIS 189586, at *9 (D.N.J. Nov. 6, 2018). "Although the First Circuit has not prescribed a specific procedure, most district courts in this circuit, including this one, employ a 'two-tiered' approach in determining FLSA collective action certification." *Anderson*, 2022 U.S. Dist. LEXIS 196144, at *9. "First, the court 'determines whether notice should be given to potential collective action members.'" *Id.* (citing *Johnson v. VCG Holding Corp.*, 802 F. Supp. 2d 227, 233 (D. Me. 2011)). "To pass this first step, a plaintiff must simply demonstrate 'a reasonable basis for [his] claim that there are other similarly situated employees.'" *Id.* at *9-10 (citing *Prescott v. Prudential Ins. Co.*, 729 F. Supp. 2d 357, 364 (D. Me. 2010)). At the second stage when the discovery is largely completed, "the court must then 'make a factual determination as to whether there are similarly-situated employees who have opted in.'" *Prescott*, 729 F. Supp. 2d at 365. "An action does not become a collective action unless other plaintiffs affirmatively opt into the class by giving written and filed consent, and the trial court certifies that such opt-in plaintiffs are in fact similarly situated and that the collective action is procedurally manageable and fair." *Anderson*, 2022 U.S. Dist. LEXIS 196144, at *10 (internal citations and quotation marks omitted).

Here, the Court granted conditional certification of the collective for purposes of the

---

[5]  In joining this motion, Defendants do not concede that the settlement collective members have any other such claims.

Settlement, and thirty-three (33) individuals joined this Settlement. No objection has been filed. The Named Plaintiff contends that he and all other thirty-two (32) individuals are similarly situated under 29 U.S.C. § 216(b) because they held the same position—delivery drivers who were classified as independent contractors and paid flat weekly rates—and were subject to the same alleged pay practices. They seek the same form of relief—unpaid wages and liquidated damages. *See e.g., Brown v. Kadence Int'l, Inc*., No. 22-1097-KSM, 2023 U.S. Dist. LEXIS 49202, at *14-15 (E.D. Pa. Mar. 23, 2023) (finding similar representations sufficient to certify collective for settlement purposes); *Anderson v. Team Prior, Inc.*, No. 2:19-cv-00452-NT, 2021 U.S. Dist. LEXIS 162626, at *3 (D. Me. Aug. 27, 2021) (granting conditional certification and authorizing opt-in consent forms for all delivery drivers for settlement purposes).

Because the proposed FLSA Settlement does not seek to bind any persons who do not affirmatively elect to participate and the parties are not requesting that the Court certify a class under Fed. Rule Civ. P. 23 (which Defendants would oppose on grounds including, but not limited to, lack of numerosity, *see also* Ex. A, §§ VII.B., IX.C), the parties respectfully submit that the approval procedures set forth in Rule 23(e) are inapplicable. *See also Herb*, 2024 U.S. Dist. LEXIS 135170, at *5 (noting that "FLSA collective actions do not implicate the same due process concerns as Rule 23 actions.") The final certification should be granted under the FLSA for settlement purposes only to effectuate the agreed Settlement.

### D. Attorneys' Fees

"The FLSA provides that, if the plaintiff prevails, courts must 'allow a reasonable attorney's fee to be paid by the defendant, and costs of the action.'" *Herb*, No. 1:22-cv-11416-JEK, 2024 U.S. Dist. LEXIS 135170, at * 12 (citing 29 U.S.C. § 216(b)). "The First Circuit has adopted two methods for calculating attorney's fees: (1) the 'lodestar' method, and (2) the

'percentage of fund' or 'POF' approach." *Id.* (citing *In re Thirteen Appeals Arising Out of San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d 295, 305 (1st Cir. 1995)). "In a common fund case such as this one, courts can employ either approach or a combination of both methods." *Id.* (internal quotation marks omitted). Moreover, in class and/or collective settlements like wage and hour settlements, "one-third of the settlement amount is commonly set aside for attorney's fees and litigation costs." *Bergeron*, 2025 U.S. Dist. LEXIS 91751, at * 12; *see also Scovil v. FedEx Ground Package Sys., Inc.*, No. 10-cv-515-DBH, 2014 U.S. Dist. LEXIS 33361, at *21 (D. Me. Mar. 14, 2014) (noting "one-third of the recovery" as counsel fee is "consistent with wage-and-hour settlements in the neighboring jurisdiction of Massachusetts…"). Furthermore, courts do not conduct "proportionality" analysis because "fee awards in wage and hour cases should encourage members of the bar to provide legal services to those whose wage claims might otherwise be too small to justify the retention of able, legal counsel." *See Brown v. Wheatleigh Corp.*, No. 3:18-cv-30056-KAR, 2024 U.S. Dist. LEXIS 69932, at * 7 (D. Mass. April 16, 2024). *See also Ying v. All-Ways Forwarding of N.Y. Inc.*, No. 20-CV-6242 (ENV)(MMH), 2025 U.S. Dist. LEXIS 61448, at *43 (E.D.N.Y. March 31, 2025) (noting that public policy also favors approval of attorneys' fees).

In the instant matter, the Class Counsel's requested counsel fees' amount at One-Third (1/3) of the settlement collective's recovery for an amount of $116,562.28 is fair and reasonable, in light of the work Class Counsel has done and the future work anticipated. Defendants do not oppose the requested amount. When "the parties settled on the fee through negotiation, there is a greater range of reasonableness for approving attorney's fees." *Singleton,* 146 F. Supp. 3d at 261 (internal quotation marks omitted).

1) <u>The "Percentage of Fund" Approach</u>

Under the Settlement, the Class Counsel asks the Court for permission for One-Third (1/3) of each settlement member's preliminary settlement share, for fees, including all cases expenses. Ex. A, § II.A.2. Presently, the Class Counsel's total expenses are about $2,287.09[6] and may incur more costs. *See* Ex. C, listing incurred and expected expenses. Deducting the expenses from the requested approval amount of $116,562.28, the actual attorneys' fees to be approved will be less than One-Third (1/3) of the settlement collective's recovery, constituting about 32.7% of the total preliminary settlement shares. Thus, the attorneys' fees sought by the Class Counsel are aligned with the standard in this District and should be approved.

2) <u>Amount of Time Devoted by Plaintiff's Counsel</u>

As of this filing, Class Counsel has spent 292 hours litigating this case, including investigating claims, drafting and filing pleadings, analyzing payroll data, engaging in settlement negotiations, negotiating and finalizing the Settlement Agreement, preparing and filing the motion for preliminary approval, coordinating with Optime and the defense counsel sending out the notices, communication with the settlement collective members, reviewing and filing the consent-to-join forms, and preparing and filing the instant motion for final approval. Guan Decl. at ¶¶ 18, 19. This substantial investment of time demonstrates Counsel's commitment to securing a favorable outcome for the collective members. Counsel's Declaration includes a lodestar calculation of $105,836.00. Guan Decl. at ¶ 19. Adding the expenses of $2,287.09 to the approximate lodestar amounts to $108,123.09.

Additionally, Class Counsel expects to expend significant additional time if the Settlement obtains final approval, including, but not limited to, continued coordination with the Settlement

---

[6] The total case expenses have been adjusted downwards after excluding certain expenses.

Administrator Optime, collaboration with Cedars' counsel, fielding questions from Settlement Collective members, attending the Court final fairness hearing, and ensuring that Named Plaintiff and the Settlement Collective members receive their settlement payments. Guan Decl. at ¶ 20. Class Counsel's final lodestar will be higher than the above-described number, and therefore the fee award to be approved by the Court will be ultimately lower than 32.7% of the total preliminary settlement shares.

        3) <u>Results of a Lodestar Cross-Check</u>

When conducting a "lodestar" analysis, the Court first calculates a "lodestar" by "multiplying the number of hours reasonably worked on a client's case by a reasonable hourly billing rate for such services based on the given geographical area, the nature of the services provided, and the experience of the attorneys." *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 305 (3d Cir. 2005). And yet, "in determining the lodestar for cross-check purposes, the Court need not engage in a full-blown lodestar inquiry with mathematical precision." *Rouse v. Comcast Corp.*, No.: 14-1115, 2015 U.S. Dist. LEXIS 49347, at *34 (E.D.Pa. April 14, 2015). In FLSA misclassification cases, a plaintiff's counsel typically takes a substantial risk because "as many FLSA misclassification cases are lost at trial as are won…" *Payton-Fernandez*, 2024 U.S. Dist. LEXIS 231619, at *31.

Here, Counsel's Declaration includes a lodestar calculation of $105,836.00, with the breakdown shown as follows:

| Name | Title | Hours | Rate | Amt. Billed |
|---|---|---|---|---|
| Jason T. Brown | Senior Partner | 12.6 | $675.00 | $8,505.00 |
| Nicholas R. Conlon | Partner | 15.5 | $450.00 | $6,975.00 |
| Zijian Guan | Partner | 92.5 | $450.00 | $41,625.00 |
| Edmund Celiesius | Former Associate Attorney | 89 | $375.00 | $33,375.00 |
| Benjamin Knox Steffans | Local Counsel Attorney | 2.6 | $535.00 | $1,391.00 |

| Legal Assistant | Legal Assistant | 76.8 | $175.00 | $13,440.00 |
| Manvir Singh | Informational Campaign Coordinator | 3 | $175.00 | $525.00 |
| **Totals** | | **292** | | **$105,836.00** |

Guan Decl. ¶ 19.   Under the Settlement Agreement, Class Counsel will be paid up to One Third

(1/3) of the total amount of the settlement collective members' paid amounts, with a minimum

amount of $60,000 which includes the case expenses. The requested amount of $116,562.28,

minus the expenses of $2,287.09, is approximately 108% of the current lodestar of $105,836.00,

which is a lodestar multiplier of 1.08.    Even multipliers of 2 and more have been found reasonable

in common fund cases. *Herb*, No. 1:22-cv-11416-JEK, 2024 U.S. Dist. LEXIS 135170, at * 14

(internal citations and quotation marks omitted); *see also Krokos v. Fresh Mkt., Inc.*, No. 1:16-cv-

12082-IT, 2018 U.S. Dist. LEXIS 204230, at * 6-7 (D. Mass. March 21, 2018) (approving one-

third (1/3) of the gross settlement amount which "represents a 1.87 multiplier applied to counsel's

combined lodestar"); *Ying*, 2025 U.S. Dist. LEXIS 61448, at *47 (approving the adjusted lodestar

multiplier of 3.02); *Katz v. DNC Servs. Corp.*, No. 16-5800, 2024 U.S. Dist. LEXIS 20629, at *43

(E.D. Pa. Feb. 5, 2024) (finding the 2.08 lodestar multiplier reasonable).

Class Counsel anticipates spending additional time on fielding questions from settlement

collective members, continued collaboration with Cedars' counsel, attending the final fairness

hearing, and ensuring that Named Plaintiff and the settlement collective members receive their

settlement payments. Guan Decl. at ¶ 20. Therefore, the final lodestar will be higher than

$105,836.00 and the final actual lodestar multiplier at the conclusion of the settlement will be

lower than 1.08, with the possibility of a negative multiplier.

Class Counsel respectfully submits these hourly rates are reasonable in light of each

person's professional qualifications and experience, as set forth in the firm resume accompanying

counsel's Declaration, and are consistent with rates counsel have proposed in support of similar lodestar crosschecks that have been approved in this Circuit and nearby Circuits. *See e.g., Davis v. Footbridge Eng'g Servs., LLC,* No. 09cv11133-NG, 2011 U.S. Dist. LEXIS 93645, at * 14 (D. Mass. August 22, 2011) (approving $650 and $565 for partners, $425 for senior associates, $355 for associates, and $210 for paralegals); *Brown,* No. 3:18-cv-30056-KAR, 2024 U.S. Dist. LEXIS 69932, at * 5 (approving $500 per hour for a partner with 25 years of experience); *Kapolka*, No. 2:18-cv-01007-NR, 2019 U.S. Dist. LEXIS 182359, at *27-31 (accepting proposed rates of up to $650 per hour, for purposes of approving fee under lodestar crosscheck).

Accordingly, the requested attorneys' fees, which compensate case expenses, are fair and reasonable under both the "percentage of fund" approach and the "lodestar" approach.

### E.    Costs

Here, the requested fee amount includes the $2,287.09 incurred and expected case expenses. Ex. C. *See Davis,* 2011 U.S. Dist. LEXIS 93645, at * 3 ("the court shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action.") (internal quotation marks omitted). The costs (including any future costs) in this Settlement are lumped with fees, so there is no additional recovery from the fund for costs.

### F.    Service Award

"Service payments are a common feature of collective action settlements." *Brown*, No. 22-1097-KSM, 2023 U.S. Dist. LEXIS 49202, at *25 (quoting *Sullivan v. DB Invs., Inc*., 667 F.3d 273, 333 n.65 (3d Cir. 2011)). "Named plaintiffs in class and collective actions play a crucial role in bringing justice to those who may otherwise have no access to judicial enforcement of their rights." *Krokos*, No. 1:16-cv-12082-IT, 2018 U.S. Dist. LEXIS 204230, at * 5. These payments

serve "to compensate named plaintiffs for the services they provided and the risks they incurred during the course of [the] litigation and to reward the public service of contributing to the enforcement of mandatory laws." *Sullivan*, 667 F.3d at 333 n.65 (cleaned up).

Here, the proposed $10,000 service award is reasonable in relation to the time and risk the Named Plaintiff has incurred in prosecuting this action, and by the overall fairness and reasonableness of the proposed Settlement as set forth herein. The Named Plaintiff's efforts in prosecuting this action have included allowing the action to be filed in his name, providing information and documents to counsel, participating in telephone conferences with counsel, engaging in settlement negotiations, and undertaking stress and other indirect influences. Further, this service award is in exchange for a release that is broader than his alleged wage and hour claims. Accordingly, the proposed service award should be approved at the final approval stage. *See McGowan v. CFG Health Network, LLC*, No. 3:22-cv-02770-ZNQ-RLS, 2024 U.S. Dist. LEXIS 60062, at *40-42 (D.N.J. March 28, 2024) (approving $5,000 service award paid in exchange for general release); *Katz*, 2024 U.S. Dist. LEXIS 20629, at *46-47 (approving $10,000 service payment); *Krokos*, No. 1:16-cv-12082-IT, 2018 U.S. Dist. LEXIS 204230, at * 5 (approving $4,500 service award in exchange for general release for each named plaintiff); *Pallotta v. Univ. of Mass. Mem'l Med. Ctr.*, No. 4:22-cv-10361-ADB, 2023 U.S. Dist. LEXIS 215863, at *8 (D. Mass. December 5, 2023) (approving service awards of $8,500 for each of the class representative plaintiffs).

## IV.        CONCLUSION

For the reasons set forth herein, the proposed Settlement is a fair and reasonable resolution of a *bona fide* dispute over Defendants' liability and exposure for the claims asserted in this action. Accordingly, the parties respectfully request the Court: (1) approving the Settlement as fair,

reasonable, and adequate as it applies to the Settlement Collective members who have opted-in; (2) declaring the Settlement to be binding on the Named Plaintiff, the Settlement Collective members, and Defendants; (3) dismissing with prejudice the claims of the Named Plaintiff and the Settlement Collective members, including Count II of the Plaintiff's Complaint; and (4) approving the amount of attorneys' fees which include costs to Class Counsel, the amount of the service award to the Named Plaintiff and the administration costs to the Settlement Administrator Optime.

Respectfully submitted,

Dated: December 1, 2025

BROWN, LLC
By: */s/ Zijian Guan*
Zijian Guan (Admitted *Pro Hac Vice*)
111 Town Square Place, Suite 400
Jersey City, New Jersey 07310
T: (877) 561-0000
F: (855) 582-5297
cocozguan@jtblawgroup.com

-And-

STEFFANS LEGAL
By: */s/ Benjamin Knox Steffans*
Benjamin Knox Steffans
180 Elm Street, Suite I, Box 183
Pittsfield, MA 01201
TEL: (413) 347-4845
FAX: (413) 418-4174
bsteffans@steffanslegal.com

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on December 1, 2025, I served a true and correct copy of the foregoing document by filing it on the Court's ECF system.

By:    */s/ Zijian Guan*
Zijian Guan

7646479.1